UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Bryant Loving, <br><br> Plaintiff, <br><br> v. <br><br> David Gomez, et al., <br><br> Defendants. | Case No. 19-cv-00029 <br><br> Judge Mary M. Rowland |

# MEMORANDUM AND OPINION ORDER

Plaintiff Bryant Loving alleges that he suffered a violation of his constitutional and statutory rights while incarcerated at the Sheridan Correctional Center, resulting from Defendants' denial and delay of medical treatment to Plaintiff. Plaintiff sues Sheridan Warden David Gomez, Sheridan Director of Nursing Krista Torres, Sheridan Health Care Unit Administrator Debra Duffel, and Wexford Health Sources, Inc., pursuant to 42 U.S.C. § 1983 for violating Plaintiff's Eighth Amendment rights.

Defendants Gomez, Torres, and Duffel have moved to dismiss Plaintiff's single-count complaint against them. [93]. For the reasons explained below, this Court denies Defendants' motion to dismiss.

## I. Background

This Court accepts as true the following factual allegations from the amended complaint [76]. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021).

1

Plaintiff became an inmate under the care of the Illinois Department of Corrections on July 18, 2017. [76] ¶ 7. Plaintiff has remained at Sheridan, an IDOC facility, at all relevant times. *Id.* ¶ 1, 11. Defendant David Gomez has, at all relevant times, served as Warden of Sheridan and oversaw the care of the inmates housed at Sheridan. *Id.* ¶ 8. At all relevant times, Defendant Krista Torres served as Director of Nursing at Sheridan, *id.* ¶ 9, and Defendant Debra Duffel served as the Health Care Unit Administrator at Sheridan, *id.* ¶ 10. Plaintiff sues Gomez, Torres, and Duffel in their individual capacities. *Id.* ¶¶ 8–10. Defendant Wexford Health Sources, Inc. provided medical services to inmates housed at Sheridan pursuant to a contract with the IDOC. *Id.* ¶ 11.

Since at least March 2017, Plaintiff has suffered from genital herpes lesions that have caused him pain; the condition results in significant drainage requiring dressing changes once or twice daily. *Id.* ¶ 15. While at Sheridan, Plaintiff suffered from various other ailments including chronic kidney disease, kidney failure, a staph infection, and boils on both buttocks. *Id.* ¶¶ 2, 14, 15, 24. On or around July 18, 2017, when Plaintiff arrived at Sheridan, medical staff at Sheridan learned about Plaintiff's medical conditions. *Id.* ¶ 14.

On October 27, 2017, Sheridan officers transported Plaintiff to Cook County's Stroger Hospital to see Joerg Albrecht, a doctor in Stroger's dermatology department. *Id.* ¶¶ 3, 16. Dr. Albrecht informed the Sheridan officers that Plaintiff needed to return to Stroger for a follow-up appointment in one week. *Id.* ¶ 16. A few days later, on November 1, 2017, Sheridan medical staff spoke with Dr. Albrecht; during that

2

conversation, Dr. Albrecht recommended that Plaintiff use cidofovir as a topical ointment and that Plaintiff be hospitalized for IV Foscarnet (Foscavir) which would require weeks of treatment. *Id.* ¶ 17. On November 13, 2017, Sheridan medical staff noted that they received collegial approval for Plaintiff's follow-up visit at Stroger. *Id.* ¶ 18.

Weeks later, on December 10, 2017, Plaintiff complained to Sheridan medical staff that he had not yet attended his follow-up appointment at Stroger. *Id.* ¶ 19. Sheridan medical staff informed Plaintiff "he was supposed to get a culture but it needed to be approved by Wexford." *Id.* The following day, December 11, 2017, Sheridan medical staff noted that Plaintiff had been in throbbing pain for three weeks. *Id.* ¶ 20.

On December 21, 2017, Plaintiff returned to Stroger Hospital to receive IV antiviral treatment. *Id.* ¶ 21. There, Dr. Albrecht and Dr. Matticks, a Wexford doctor, determined that Plaintiff would see a doctor at the University of Illinois at Chicago's Infectious Disease Department (IDD). *Id.* ¶ 21. About two months later, on February 12, 2018, Dr. Richard Novak, a doctor at IDD, recommended that Plaintiff return to the clinic in one week to receive cidofovir as a topical ointment. *Id.* ¶ 22. On July 2018, however, Dr. Novak noted that the topical compound could not be billed; he therefore gave the prescription to the guards for Wexford to fulfill. *Id.* ¶ 26. On July 2 and July 5, Plaintiff visited IDD again. *Id.* ¶ 27. On those dates, the IDD again recommended that Plaintiff receive cidofovir as a topical ointment, and collegial review "was written for compounding of antiviral medication cidofovir for

3

topical use." *Id.* ¶ 27. Between August and October 2018, Plaintiff repeatedly asked why he had not yet received the topical cream. *Id.* ¶ 29. In November 2018, Plaintiff finally received the cidofovir medication as a topical ointment. *Id.* ¶¶ 6, 31.

In addition to his medical condition for which he received cidofovir, Plaintiff also developed boils on both buttocks in June 2018. *Id.* ¶ 24. On June 20, 2018, Sheridan medical staff attempted an incision and drainage procedure on the boils without any anesthesia, resulting in great pain to Plaintiff. *Id.* ¶ 18. Plaintiff alleges this procedure should not have been performed without anesthesia. *Id.*

Plaintiff alleges to have endured severe pain, itching, and discomfort resulting from Defendants': (1) delay in providing Plaintiff with cidofovir topical ointment—over twelve months from the time Dr. Albrecht prescribed it; and (2) treatment, through the incision and drainage—without anesthesia—of Plaintiff's boils, which Plaintiff developed during his time at Sheridan. *Id.* ¶¶ 6, 25, 31. Plaintiff also alleges that he informed Gomez, Torres, and Duffel "on multiple occasions about the denial of proper medical treatment," but these Defendants failed to address Plaintiff's needs. *Id.* ¶ 38.

Plaintiff brings a one-count complaint for the exacerbation of Plaintiff's injuries through Defendants' deliberate indifference to the Plaintiff's serious medical needs and for denying and delaying necessary treatment. *Id.* ¶¶ 32–39. Defendant Wexford has answered the amended complaint. [100]. Defendants Gomez, Torres, and Duffel have moved to dismiss the amended complaint. [93].

## II. Legal Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). To survive a motion to dismiss under Rule 12(b)(6), "the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC.*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); see also Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well- pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Degroot v. Client Servs., Inc.*, 977 F.3d 656, 659 (7th Cir. 2020). A plaintiff need not plead "detailed factual allegations," but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial

5

experience and common sense." *Bilek*, 8 F.4th at 586–87 (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016)).

### III. Analysis

In moving to dismiss, Defendants primarily argue that Plaintiff fails to state a cognizable Section 1983 claim because he has not alleged sufficient facts from which this Court could infer the requisite personal involvement. [94] at 2–3. A Section 1983 claim based upon individual involvement requires Plaintiff to establish "*direct* liability." *Taylor v. Ways*, 999 F.3d 478, 494 n.7 (7th Cir. 2021). To recover damages against an official in a supervisory role, "a § 1983 plaintiff may not rely on a theory of respondeat superior and must instead allege that the defendant, *through his or her own conduct*, has violated the Constitution." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (emphasis added).

Plaintiff's allegations regarding personal involvement come from two paragraphs in his complaint. He alleges that during his stay at Sheridan, he "complained to Defendants Duffel, Torres, and Gomez on multiple occasions about the denial of proper medical treatment to him," and that they "failed to address [his] concerns and to provide him with the care he requested and needed." [76] ¶ 38. Plaintiff also alleges that, by "denying and delaying proper medical treatment," those Defendants "further injured [him] by exacerbating injuries that [he] had to live with while incarcerated for over a year." *Id.* ¶ 39. Although somewhat vague, these allegations suffice at the pleadings stage, where the plaintiff need only "generally name the 'persons responsible for the problem.'" *Hill v. Cook County*, 463

F. Supp. 3d 820, 836 (N.D. Ill. 2020) (quoting *Koh v. Graf*, No. 11-CV-02605, 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013)); *see also, e.g.*, *Beehn v. Doe*, No. 16-CV-1282-SMY, 2017 WL 1551389, at *3 (S.D. Ill. May 1, 2017) ("When a defendant is put on notice that an inmate suffers from a serious condition and refuses to intervene, they may be liable."); *Palmer v. Franz*, 928 F.3d 560, 564 (7th Cir. 2019) ("It is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk."); *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) ("[P]risoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference."); *compare, e.g.*, *Thomas v. Chmell*, No. 20 C 4564, 2021 WL 5113903, at *4 (N.D. Ill. Nov. 3, 2021) (dismissing two defendants for lack of personal involvement where the complaint "offers no facts suggesting that either [defendant] actually knew about plaintiff's medical condition or had any personal involvement in the constitutional violations he alleges"). Taking Plaintiff's allegations as true, he complained to the named Defendants about his medical issues and, despite this knowledge, Defendants ignored his plight and caused him more pain and suffering. These allegations sufficiently plead Defendants' personal involvement.

Defendants next argues that Plaintiff's complaint boils down to a quibble with the particular medical treatment that he received, and that Sheridan used "reasonable measures" to avoid any serious risk of harm. [94] at 3–4. To be sure, disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403,

409 (7th Cir. 2014). But Plaintiff does not allege that Defendants provided him a different course of treatment than that he preferred. He alleges that Defendants delayed in providing him the treatment he was prescribed and that this delay "exacerbated his injuries and prolonged suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (internal quotation marks omitted). The alleged delay and prolonged suffering undoubtedly states an Eighth Amendment violation. *See Perez*, 792 F.3d at 781.

Finally, this Court rejects Defendant Gomez's argument that the law entitled him to rely upon health care providers' decisions, inoculating him from Section 1983 liability. *Contra* [94] ¶¶ 4–5. While the law generally allows prison officials to rely upon medical personnel's' judgment as to an inmate's medical care, it does not permit officials to ignore a prisoner's plight. *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021). Taking Plaintiff's allegations as true, Gomez ignored Plaintiff's complaints that he had not refused treatment for one or more of his painful conditions. Gomez's alleged refusal to do something in the face of such knowledge can amount to deliberate indifference. *Id.*

## IV. Conclusion

For the stated reasons, this Court denies Defendants' motion to dismiss [93]. Defendants Gomez, Torres, and Duffel are ordered to answer the amended complaint by 3/10/22.

E N T E R:

Dated: February 16, 2022

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

9